## 9854

### LINLEY ET AL. v. CITIZENS NAT. BANK OF ANDERSON ET AL.

(94 S. E. 874.)

1. CONSTITUTIONAL LAW — POWERS OF CLERKS OF COURT — JUDICIAL POWERS—"PROPER OFFICAL CHANNEL."—Const. S. C., Amend. 1, requires the General Assembly to provide by law for the condemnation through proper official channels of lands necessary for the proper drainage of swamp and lowlands, etc. Act Feb. 18, 1911 (27 St. at Large, p. 92), relative to drainage and drainage districts, provides that the clerk of the Court of Common Pleas shall have jurisdiction, power, and authority to establish a levee or drainage district or districts in his county and to locate and establish levees, drains, etc., and imposes on him numerous duties and powers respecting drainage districts and their organization. Held that, while some of the powers so conferred upon the clerk are judicial in that they embrace the power to weigh and consider, and while some of such powers could not have been conferred on the clerk but for the amendment, the provisions conferring such powers are valid under the amendment, as "proper official channel" is synonymous with suitable or expedient or eligible official channel, and the

power to provide by law for the proper official channel includes the power to designate what persons shall be the official channel.

2. DRAINS—ORGANIZATION OF DRAINAGE DISTRICTS—POWER OF DEPUTY CLERKS OF COURT.—Civ. Code 1912, sec. 2199, provides relative to drainage districts that, when the preliminary report of the engineer and viewers is filed, the clerk of the Court shall consider it, that if they report that the drainage is not practicable, etc., and the clerk shall approve such findings, the petition shall be dismissed, but that, if they report that it is practicable, etc., and the clerk shall so find, he shall fix a day when the report will be further heard and considered. Civ. Code 1912, sec. 1304, authorizes the clerk of the Court of Common Pleas to appoint a deputy, and provides that, when qualified, the deputy may do and perform any and all of the duties appertaining to the office of his principal, and Code Civ. Proc. 1912, sec. 38, contains similar provisions. *Held,* that the deputy clerk could pass upon and confirm the report of the engineer and viewers and certify to his action in his own name instead of in the name of the clerk.

3. DRAINS—ORGANIZATION OF DRAINAGE DISTRICTS—NOTICE OF HEARING—"PUBLICATION."—Civ. Code 1912, sec. 2200, provides that, if the petition to organize a drainage district is entertained by the clerk of the Court, notice shall be given by publication for two consecutive weeks in a newspaper, and also by posting such notice, and that at least 15 days shall intervene between the date of publication and of posting of notices and the day set for hearing. *Held* that, where the hearing was set for September 6th, publication in a newspaper on August 21st and again the following week was sufficient; "publication" being defined as the act of publishing anything or offering it to public notice.

4. DRAINS—DRAINAGE DISTRICTS—POWER TO ISSUE BONDS.—Civ. Code 1912, secs. 2214, 2215, and the sections following provide that after a drainage district is established a board of drainage commissioners shall be designated who shall appoint a superintendent of construction, that the board and superintendent shall let the work to the lowest responsible bidder either as a whole or in sections, as they may deem most advantageous for the district, and that, if the total cost of the work is less than an average of 25 cents an acre on the land in the district, the assessment shall be collected in one installment, but that, if the cost exceeds 25 cents an acre, bonds may be issued. *Held* that, where the work is let in sections, bonds may be issued only in such amount as the cost of the section let bears to the entire estimated cost, and bonds may not be issued for the cost of a section until the contract has been let.

Before PRINCE, J., Anderson, at chambers, Anderson, November, 1917. Modified and affirmed.

Suit by John W. Linley and others, as a body corporate under the name and style of the Board of Drainage Commissioners of Eighteen Mile Creek Drainage District, against the Citizens National Bank of Anderson, S. C., and another. From a decree in favor of plaintiffs, defendants appeal.

The constitutional amendment designated as article I of amendments to the Constitution reads as follows:

"The General Assembly shall provide by law for the condemnation, through proper official channels, of all lands necessary for the proper drainage of the swamp and lowlands of this State, and shall also provide for the equitable assessments of all lands so drained, for the purpose of paying the expenses of such condemnation and drainage."

Civ. Code 1912, sec. 2200, is as follows:

"*Notice.*—If the petition is entertained by the aforesaid clerk of Court, notice shall be given by publication for two consecutive weeks in some newspaper of general circulation within the county or counties, if one shall be published in such counties, and also by posting a written or printed notice at the door of the courthouse, and at five conspicuous places within the drainage district, that on the date set, naming the day, the said clerk of Court will consider and pass upon the report of the viewers. At least fifteen days shall intervene between the date of publication and the posting of notices and the date set for the hearing."

The digest of the clerk's duties mentioned in the opinion is as follows:

Duties of the clerk in a drainage case:

(1) To issue a summons to such landholders who have not joined in a petition for drainage, and to appoint an engineer and board of viewers.

(2) To consider the preliminary report of engineer and viewers: (a) It if be practicable; (b) if it benefits the public health; (c) if it shall impair a public highway; (d) if it be conducive to the general welfare of the community.

(3) To give two weeks' notice by publication, if the petition be entertained by him, that he will consider and pass on the report.

(4) To then hear and determine any objections to be made to the report; to verify the sufficiency of the petition before filed; to exclude such landowners who will not be affected, and to include those who shall; to declare established the drainage district.

(5) To act in condemnation proceedings as he already acts in other condemnation cases.

(6) To refer back to engineer and viewers the report for them to make a complete survey and plans, and to fix a time for that business.

(7) To extend the time for a complete survey and to fix another day for its completion.

(8) To examine the final report when it is filed with him, and to accept it if in due form and in accordance with law; to refer it back to engineers and viewers if not in due form, etc., for another report; then to give two weeks' notice of a final hearing on the report.

(9) To keep a drainage record in a book.

(10) To appoint a board of drainage commissioners.

(11) To confirm the classification of the lands by engineers and viewers with reference to the benefits to it.

(12) To draw out of the banks, at the maturity of drainage bonds, the sinking fund provided for their redemption.

(13) To confirm assessments for the construction of drains.

*Messrs. Watkins & Prince* and *Quattlebaum & Cochran,* for appellants, submit: *The drainage laws are unconstitutional:* 165 Ill. 527; 36 L. R. A. 105; 56 Ohio St. 375; 38 L. R. A. 519; 60 Am. St. Rep. 756; 47 N. E. 551; Cooley Const. Lim. 109; Art I of the amendments to the Constitution (adopted in 1901); sec. 27, art. V, Const. 1895; 5 R.

C. L. 626; 11 C. J. 848, 890; 132 Ill. 403; 7 L. R. A. 729; 23 N. E. 1072; 5 R. C. L. 626; sec. 1, art. V, Const. 1895; sec. 14, art. I, Const. 1895; 165 Ill. 527; 36 L. R. A. 105; 56 Ohio St. 575; 38 L. R. A. 519; 60 Am. St. Rep. 756; 47 N. E. 551. *As to powers of deputy clerk under the drainage laws:* Code of Laws 1912, sec. 2199; sec. 1304 *ibid;* 238 Fed. 510; 20 Wall. 92; 22 L. Ed. 320; 5 R. C. L. 628; 11 C. J. 913-14; 105 N. C. 65; 11 S. E. 177; 113 N. C. 18, S. E. 70; 95 Ky. 757; 31 S. W. 874; 106 Am. St. Rep. 437; 31 L. R. A. 33; 30 S. C. 527; 9 S. E. 659; 13 Cyc. 1045; 113 N. C. 1; 18 S. E. 701; 31 Fla. 150; 12 So. 17; 10 L. R. A. 177; Note 106 Am. St. Rep. 826; Code of Laws 1912, secs. 2232, 2199, 2200, 2201, 2211. *As to time required for publication:* Code of Laws 1912, sec. 2200. *As to powers of drainage commissioners in having the work done:* Code of Laws 1912, sec. 2211.

*Messrs. Bonham, Watkins & Allen,* for respondents, cite: *As to main issue:* Code of Laws 1912, sec. 2197, as amended by the acts of 1914 and 1915; art I, Const. 1895, secs. 14 and 27; art. V, Const. 1895, secs. 1, 20 and 21; Code of Laws, secs. 1313, 1318, 1322, 1323, 1348, 1349, 1373; Code of Civil Procedure, secs. 263, 264, 280, 295; R. C. L. 626-7; 36 L. R. A. 111; 38 L. R. A. 519. *As to powers of deputy clerk:* Code of Laws, vol. I, sec. 1304; Leading Case Law 628-9. *As to time required for publication:* Code, vol I, secs. 2200 and 1700; 10 Rich. 395. *As to powers of drainage commissioners in having the work performed:* Chap. XXXII, art. I, Code 1912; Code of Laws 1912, vol. I, secs. 2216, 2226, 2227, 2230 and 2232.

January 18, 1918.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The case involves the validity of a proposed bond issue of $33,000 by the board of drainage commissioners of Eighteen Mile Creek drainage district in Anderson, tenta-

tively sold to the defendants by the plaintiffs. The issue is not made by those who are liable to pay the bonds, but by two banks which have agreed to buy them, and which with characteristic timidity have shied at suspected defects in the security. The Circuit Court sustained the bonds, and we think that event fixed their character; but the banks have nevertheless appealed. The circuit decree is generally right, and none of the exceptions are sound, except a part of that set down as the fourth ground. Time and the exigencies of the case suggest a speedy judgment.

There are four main grounds of appeal so argued by the appellants. They are: (1) That the clerk had no jurisdiction under the Constitution to do the acts he did; (2) that the clerk's deputy had no power to find in the deputy's name or at all for the preliminary report of the viewers (section 2199); (3) that the clerk did not give the notice required by law (section 2200) of his purpose to consider and pass upon the report of the viewers; (4) that the board of drainage commissioners had no power to let to contract a part of the work of drainage, and to do the balance of it by day labor.

The primary right involved, which is the clerk's jurisdiction, rests upon the amendment to the Constitution adopted in 1901 (23 Stats. 616) and the well-considered statute enacted in 1911 pursuant thereto (27 Stats. 92). The Reporter will print the annexed digest of the clerk's duties under the statute. The amendment to the Constitution will be fully reported. That instrument creates the fundamental right. It authorizes the General Assembly: (1) To provide by law for the condemnation of lands necessary for drainage; (2) to provide for the equitable assessment of lands so drained; and (3) to provide for paying the expenses of such condemnation and drainage; and (4) to provide "proper official channels" to effect those ends. The numerals are supplied.

The brunt of the appellants' attack is on the jurisdiction of the clerk to exercise the many powers conferred upon him by the statute. The statute plainly lodges in the clerk plenary jurisdiction to accomplish the ends of the statute. It declares:

"The clerk of the Court * * * shall have jurisdiction, power and authority to establish a levee drainage district * * * in his county." Act Feb. 18, 1911 (27 St. at Large, p. 92), sec. 1.

And it is equally plain that some of the powers thus conferred upon the clerk are judicial; that is to say, they are the power to weigh and consider.

It is true that the legislature would be without power to authorize a clerk to try, for instance, an action for the recovery of money. That would be to exercise a judicial power lodged by the Constitution in Courts alone. It is true that generally the clerk is a ministerial officer, and not a judicial officer, if these words enlighten more than they confuse. And it is true that the legislature could not have conferred on the clerk some of the powers, those which are judicial, enumerated in the statute but for the enabling constitutional amendment before referred to. But that amendment, passed by a vote of the people for a great public purpose, ought not to be dissipated by verbal discriminations; it ought to be given force to compass the end in view.

We reject as unsound the appellants' suggestion that the amendment is a limitation upon the power of the legislature to designate a channel to effect the end; and that only such a channel may be designated by the legislature as might have been designated before the amendment, to wit, a person theretofore empowered by the other provisions of the Constitution to exercise judicial powers. The amendment conferred new and enlarged powers on the legislature. It looked to a new order, and not to an old. The amendment undertook, as before suggested, to provide for four things, and one of them, and the chiefest, because first mentioned,

was an instrumentality to effect the end in view. "Proper official channel" is synonymous with suitable official channel, or expedient official channel, or eligible official channel. It was manifest to the lawmakers who drafted the amendment, and to the people who adopted it, that a novel enterprise was being inaugurated, and that there was no efficient, convenient and adaptable agency then at hand to execute its provisions. Had the amendment been written into the legislature article of the Constitution when that instrument was adopted as ideally it was, then it is plain the language of it would not be limited so as to make proper official channel mean only the Courts elsewhere established in the instrument. If the intent of the amendment had been that suggested by the appellants, the apt words to express it would have been "through those channels now existent," or language of similar import. The power to provide by law for "proper official channels" to accomplish the ends in view included the power to designate what persons should be the official channel. The legislature might have designated as the "proper official channel" a Circuit Judge, a clerk of Court, a sheriff, or any other agency it deemed proper. Considering all the provisions of the statute, it is altogether likely, indeed it is manifest, that a clerk of Court is the most available and efficient agency to compass the end in view.

When the preliminary report (section 2199) of the engineer and viewers was filed in the clerk's office, an order was made confirming the same, "because the facts have been determined to my satisfaction as clerk of Court." But the order was signed: "Clarence W. Beaty, Dept. C. C. C. P. (Seal.)" The contention of the appellant, and that fetches us to the second ground, is that the order is a nullity because a deputy clerk made it, and had no power to make it. There is no suggestion that the clerk would not have made the order, or that the clerk was ignorant of the making, or that the order was wrong.

As long ago as 1768 clerks were given the power "to *act by themselves,* in the business of their proper Courts, or to *appoint clerks* of the said Courts * * * for the conduct of which clerks they shall, respectively, be answerable." 7 Stats. 201. The italics are supplied. And before that the chief clerk in the Court of King's Bench "had the appointment of the secondary or deputy to the chief clerk." 1 Tidd's Pr. 229. Our present statute declares the same law. Code, sec. 1304. It is manifest that this deputy is but another clerk; and when he performs the duties incident to the office, he is acting as clerk; and it is immaterial whether he signs the clerk's name or his own to certify to his act.

In the instant case the deputy signed his own name, and used the seal of office. He was appointed clerk of Pearman, the chief clerk, and as such he had the right to act in his own person and to certify his action by his own name. Under the present statute (section 1304) the deputy must take the constitutional oath of office, "and when so qualified the deputy may do and perform any and all of the duties appertaining to the office of his principal." See, also, Code of Procedure, sec. 38. If the clerk has the power under the Constitution to exercise the jurisdiction in question, then the deputy has the like power. There is no escape from that conclusion.

We have not considered in this connection, because not needful, the respondents' suggestion that the clerk, Pearman, signed the final report, and that by the terms of section 2232 the drainage statute is required to be liberally construed, and is not to be defeated "by reason of any defect in the proceedings occurring prior to the order of the clerk of Court confirming the final report of the viewers."

The other two named exceptions may be shortly disposed of. The third one suggests insufficient notice to landholders of the clerk's intention to consider and pass upon the preliminary report of the viewers. The statute directs, *inter alia,* that "at least 15 days shall

intervene between the date of publication * * * and the date set for the hearing." Let section 2200 be reported.

It is admitted that a publication was made in a newspaper on August 21st, and again the consecutive week. The hearing was set for September 6th following. Publication is defined as "the act of publishing anything; offering it to public notice." Black Dic., p. 964. In the instant case there would be no room to question the meaning of the statute but for the last sentence of it. The appellants stall on that sentence. But that is not equivocal. The statute provides that two concurrent methods shall be used to give notice: (1) That by newspaper publication; and (2) that by posting on the courthouse door (the second not in issue). And each method is prescribed to compass the same end. Yet the act of posting a notice on the courthouse door is instant in time and place; and the statute only requires the intervention of 15 days betwixt that event and the hearing; and in the instant case there was 15 days betwixt the two events.

The fourth and final contention alone has some merit in it. The statute expressly permits the board of drainage commissioners to "let to the lowest responsible bidder, *either as a whole or in sections,* as they may *deem most advantageous for the district,* the proposed work." The italics are added. The estimated cost of the completed enterprise was $33,307.70. The board of drainage commissioners let to contractors a portion of that work for $27,235.20, and that included the main stream of Eighteen Mile Creek, and excluded the small tributaries thereto. The balance of the work has not been let; but the appellants admit that the estimated cost of it is within the bond limit.

The record does not show that the drainage commissioners have a fixed mind to do the remainder of the work by day labor. The answer alleges so much, but the reply alleges that the work will probably be let to contractors; but it has not been so let. The appellants do not seriously

contend, if at all, that the commissioners may not let the work to contract in sections; but they do make the question that bonds shall not be issued and sold for an unlet section. The respondents contend the contrary. They say that:

"The only condition precedent to the issuing of the bonds is that the commissioners shall ascertain and determine that the total assessment will exceed the sum of 25 cents per acre on all the lands in the district."

We hold with the appellants. The scheme of the statute is, after preliminaries, that a board of drainage commissioners be designated (section 2214); that this board shall appoint a superintendent of construction (section 2215); that the board and superintendent shall, upon due notice, "let to the lowest responsible bidder, either as a whole or in sections," etc., as before quoted; that, if the total cost of the drainage shall not exceed 25 cents per acre, it shall be paid by the landholder by one assessment, in the same manner as taxes are collected, and if the cost exceed 25 cents per acre, it shall be paid, *inter alia,* by the landholder through the issuance of the commission of bonds. Manifestly the statute prevised an estimated cost; then a contract (with bond) by a bidder to do the work; then a payment by tax assessment or by bond issue.

For the section already let bonds may be issued in such amount as the cost of the section let bears to the entire estimated cost of the whole; but for a section not yet let to contract payment may not be exacted either by tax or by bond until the same has been let to contract.

In that respect alone the decree of the Circuit Court is modified, and in all other respects it is affirmed.

MR. CHIEF JUSTICE GARY, and MESSRS. JUSTICES WATTS and FRASER concur.

MR. JUSTICE HYDRICK did not sit in this case.